## In the United States District Court
## for the District of Kansas

———————————

Case No. 23-cv-02087-TC

———————————

CHANCE M. S.[1]

*Plaintiff*

v.

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

———————————

## MEMORANDUM AND ORDER

Plaintiff Chance M. S. claims that he cannot work due to several impairments resulting from a traumatic work injury. Plaintiff now seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income benefits pursuant to Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

## I

## A

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and

---

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g., Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). Consequently, a court will "not re-weigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16 3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§

404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

Plaintiff was severely injured while at work when a railroad beam fell on his head in July 2015 and he was hospitalized for nearly a month. Doc. 8 at 1, 4. He protectively filed for disability in September 2017 and claims he cannot work due to multiple impairments, many of which arose from the work injury, including hearing loss and traumatic brain injury. *See* Doc. 8 at 1–2; Adm. Rec. 13.

This is Plaintiff's second appeal of an ALJ's unfavorable decision on his claim. He was initially denied by an ALJ in October 2020, which was reversed and remanded for additional proceedings. *See* Adm. Rec. 1835 (citing case no. 21-cv-2136). In November 2022, an ALJ issued the unfavorable decision that is the basis of this appeal. *See* Doc. 8 at 1.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 27, 2015. Adm. Rec. at 1752.[2] At step two, the ALJ determined that Plaintiff had several medically determinable impairments. *Id.* In particular, he found Plaintiff had eight "severe impairments: bilateral hearing loss with right ear deformity status-post surgical fixation; obesity; traumatic brain injury; neurocognitive disorder; depressive disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and polysubstance abuse." *Id.* (citing 20 C.F.R. § 404.1520(c)). The ALJ found that Plaintiff also had eighteen non-severe impairments, including "headaches/migraines." *Id.* The ALJ credited these impairments as non-severe because they were resolved with treatment, were being adequately controlled, or had not persisted for a continuous 12 months or more. *Id.*

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Adm. Rec. at 1753. Specifically,

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

he analyzed Listing 2.10 (hearing loss), 11.18 (traumatic brain injury), and four listings for mental disorders: 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). *Id.* at 1753–54.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work. Adm. Rec. at 1755–60. Specifically, he found:

> [T]he claimant had the residual functional capacity to lift and carry up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant can occasionally climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs. The claimant can occasionally tolerate exposure to humidity and extreme heat. The claimant can occasionally work at unprotected heights or with moving mechanical parts. Due to right-sided hearing loss the claimant is limited to occupations that do not require fine hearing capability, complex verbal communications, or frequent verbal communications such as telephone communication, but is able to hear and understand simple verbal instructions and to communicate simple information. The claimant is able to apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with occasional judgment and workplace changes. The claimant can occasionally respond to and have interaction with coworkers and the general public.

*Id.* at 1755.

At step five, the ALJ found that Plaintiff could not perform any past relevant work. Adm. Rec. at 1760–61. But the ALJ also found that Plaintiff could perform other jobs in the national economy, even with his limitations. *Id.* at 1761–62. Specifically, the ALJ found that Plaintiff

could perform the jobs of deli cutter/slicer, silver wrapper, and apparel stock checker. *Id.* He also found that these jobs existed in sufficient numbers in the national economy. *Id.* Thus, the ALJ determined that Plaintiff was not disabled. *Id.*

Plaintiff seeks review of the ALJ's decision. *See* Doc. 8. He contends that the ALJ erred in three ways: failing to support his RFC determination regarding Plaintiff's mental and physical limitations with substantial evidence, failing to resolve conflicts between the RFC and the vocational expert's testimony, and failing to consider whether Plaintiff was entitled to a closed period of disability. *Id.*

## II

Plaintiff argues that the ALJ's determination is wrong in three principal ways. But he has failed to establish the absence of substantial evidence to support the ALJ's factual findings or that the ALJ failed to apply the correct legal standards. As a result, the Commissioner's final decision is affirmed.

### A

Plaintiff first asserts that the ALJ's determination of Plaintiff's mental and physical functional limitations was not supported by substantial evidence. Doc. 8 at 27–32. Plaintiff is incorrect: the ALJ's RFC determination was supported by substantial evidence.

#### 1

Plaintiff argues that the ALJ miscalculated his mental functional limitations after finding Dr. Andert's opinion only partially persuasive. Dr. Andert's opinion was only partially persuasive, in the ALJ's view, because it incorrectly concluded that Plaintiff could only sustain one- or two-step instructions. Doc. 8 at 27. Plaintiff's position is that the ALJ overstated his activities of daily living, failed to explain how those activities related to his ability to follow instructions, unfairly evaluated his history of mental health treatment, and asserted without explanation that he had "essentially normal mental status examinations." Doc. 8 at 27–31. None of these arguments provides a basis for remand.

The ALJ found that Plaintiff could "perform simple, routine, and repetitive tasks," and thus that he was not limited to one- or two-step instructions as Dr. Andert opined. He supported that finding with Dr.

Andert's own opinion, other medical opinions, and Plaintiff's activities of daily living. Adm. Rec. at 1755–60. Dr. Andert had opined that "claimant was capable of doing more complex instructions," but he did not believe Plaintiff could sustain operating at that level. *Id.* at 1758. But another expert, Dr. Mintz, stated that Plaintiff could "understand and remember simple and intermediate job instructions." *Id.* at 1759. The ALJ found both doctors partially persuasive to the extent that the objective medical evidence showing Plaintiff's "delayed recall" performance suggested that he was  "limited to simple, routine, repetitive tasks." *Id.* But the ALJ found that Dr. Andert's opinion did not account for all of Plaintiff's abilities because the evidence showed he had "essentially normal mental status examinations" and his "reported activities of daily living" involved tasks beyond "1-2 step instructions." Adm. Rec. at 1758.

Plaintiff appears to believe that the ALJ's analysis of Dr. Andert's opinion should be read in a vacuum. He argues that the ALJ's statement about "essentially normal mental status examinations" is conclusory, Doc. 8 at 29–30, and that the Commissioner offered only "post hoc" rationalizations when he pointed to other parts of the ALJ's RFC determination, Doc. 16 at 4. Not so. The phrase "essentially normal mental status examinations" was a summary of facts considered, not a conclusory statement: the ALJ had already provided specific details about Plaintiff's performance on the objective mental status examinations. Adm. Rec. 1757–59. The ALJ recounted that Plaintiff "could only recall one out of three items after a five-minute delay," but noted examinations revealing that "[Plaintiff] did not exhibit any gross mental confusion, disturbances of logic, or deficits in information processing." *Id.* Nor did those examinations show "any serious chronic cognitive deficits." *Id.* The ALJ referred to this detailed summary in shorthand as "essentially normal mental status examinations" to explain why or why not he found each medical opinion persuasive. That phrase is far from a post hoc rationalization. *See Cobb v. Astrue*, 364 F. App'x 445, 450 (10th Cir. 2010) (affirming that an ALJ's decision may be read "as a whole" when determining whether a statement is without proper explanation).

The ALJ also properly considered Plaintiff's activities of daily living and conservative treatment history when evaluating Plaintiff's own statements about his symptoms. *See* 20 C.F.R. § 404.152(c)(3); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); *contra* Doc. 8 at 27–32. While activities of daily living cannot be conflated with a plaintiff's ability to

work, such activities can be considered when evaluating the severity of a plaintiff's claims. *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 848 (10th Cir. 2018). Similarly, an ALJ may use a plaintiff's medical treatment to evaluate his statements about the intensity, persistence, and limiting effects of a symptom. *Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010); *contra* Doc. 14 at 28–29. The ALJ remained within these boundaries. He did not overstate Plaintiff's activities of daily living, nor did he fail to connect them to relevant work activity. *Contra* Doc. 8 at 27–32.

The ALJ did refer to Plaintiff's ability to care for "children", Adm. Rec. at 1754–55, 58–59, even though Plaintiff said at the hearing that one child had since died, *id.* at 1792. But discussing Plaintiff's ability to care for "children," was neither improper nor a factual error even though at the time of the ALJ's final decision, Plaintiff had one surviving child. *Contra* Doc. 8 at 28. Rather, the ALJ was addressing Plaintiff's testimony at the hearing that had discussed Plaintiff's activities caring for his "children" during part of the disability period. Adm. Rec. 1792–95. The ALJ separately credited that Plaintiff needed help caring for children and that Plaintiff often only cared for one child at a time, noting that "he takes his son to school and the park." Adm. Rec. at 1755, 1757. At base, the number of children Plaintiff cared for at each moment in his alleged period of disability goes to the strength of the inference that he could perform various tasks over and above being limited to one or two step instructions, not the propriety of concluding that Plaintiff could and did generally care for "children." And how to weigh evidence, as well as the strength of inferences which to draw from it, is quintessentially a question for the ALJ. *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). It is not something for district courts to second guess on appeal. *Id.* And the ALJ also noted that Plaintiff "spends time with family and is able to perform self-care and drive on a regular basis." *Id.* at 1757. The ALJ explained that these activities of daily living were "just one more indication" that Plaintiff's mental capacity was "not as limited as he allege[d]" because these regular activities are similar to tasks necessary to "everyday basic work activity." Adm. Rec. at 1757. So the ALJ properly used activities of daily living in his credibility determination. *See Duncan v. Colvin*, 608 F. App'x 566, 578 (10th Cir. 2015) (affirming the consideration of "activities of daily living" in making a credibility determination about a disability claimant).

Plaintiff also asserts that the ALJ mischaracterized his mental health treatment. As evidence of that mischaracterization, he points to the ALJ's observation that Plaintiff did not seek "formal psychiatric care," something Plaintiff observes there is "no requirement" that he do to show a mental health impairment. Doc. 8 at 31.

The ALJ's observation is not a mischaracterization. The ALJ credited the medical evidence that Plaintiff was receiving mental health services from an internal medicine physician. Adm. Rec. 1756–57. But the ALJ noted that Plaintiff did not pursue sustained counseling until years after the alleged onset date of disability,[3] and that Plaintiff never received "inpatient psychiatric treatment or emergency intervention." Adm. Rec. 1757. The ALJ then used Plaintiff's limited mental health treatment to support his credibility determination that "other than his subjective symptoms, there is little evidence to support the severity and degree of limitation the claimant asserts." *Id.* Thus, the ALJ's evaluation of Plaintiff's mental health treatment was proper, and his credibility determination was supported by substantial evidence. *See Bainbridge v. Colvin*, 618 F. App'x 384, 387 (10th Cir. 2015) (noting that conservative treatment may undermine the credibility of a plaintiff's assertion of limitations).

In short, the ALJ supported his mental RFC finding with substantial evidence. He properly characterized Plaintiff's objective medical evidence, activities of daily living, and conservative treatment history to find Plaintiff's RFC was "consistent with being able to perform simple, routine, repetitive tasks." Adm. Rec. 1758. The ALJ's opinion need not be disturbed. *See Hendron v. Colvin*, 767 F.3d 951, 954–56 (10th Cir. 2014) (holding that an ALJ adequately supports his RFC

---

[3] Plaintiff alleges that the ALJ ignored evidence that he was seeing a psychologist in 2017. Doc. 8 at 31 (citing Adm. Rec. 365). But the administrative record does not include records from that psychologist, only a brief mention in the internal medicine physician's notes: "Started with psychologist Laura Talley and plans to continue to see her." That particular line does not disturb the ALJ's conclusion. *Contra* Doc. 8 at 31. And, in any event, the ALJ stated he reviewed all medical evidence, and this single line has no ultimate effect on the RFC determination, so does not warrant explicit analysis. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."); *see also Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (noting that an ALJ is not required to discuss every piece of evidence).

determination when he thoroughly reviews the medical evidence and plaintiff's self-reported abilities and activities); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("[The] limited scope of review precludes this court from reweighing the evidence or substituting our judgment for that of the [Commissioner].").

**2**

Plaintiff also says that the ALJ failed to consider all his medically determinable impairments in determining his physical RFC. Doc. 8 at 32. Specifically, Plaintiff says that the ALJ was required to consider the implication of Plaintiff's migraines because the migraines would cause absenteeism and/or time-off-task. *Id.* But the ALJ considered all of Plaintiff's medically determinable impairments in determining Plaintiff's RFC. *See* Adm. Rec. at 1755.

An ALJ must consider all of a plaintiff's medically determinable impairments, even those that are non-severe, in his RFC determination. 20 C.F.R. § 404.1523; 404.1545(a)(2); *see also Alarid v. Colvin*, 590 F. App'x 789 (10th Cir. 2014) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)). This obligation does not mean the ALJ must "discuss every piece of evidence," rather, a court will "generally find the ALJ's decision adequate if it discusses the uncontroverted evidence the ALJ chooses not to rely upon and any significantly probative evidence." *See Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009). In other words, an ALJ is not required to explain how every identified impairment would have "resulted in additional functional limitations or exacerbated any other impairment." *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015).

The ALJ here explicitly considered Plaintiff's headaches and migraines as a medically determinable impairment when he found them to be non-severe at step two. Adm. Rec. at 1752; *see also* 20 C.F.R. § 404.1522 (a non-severe impairment, by definition, is one that "does not significantly limit [plaintiff's] physical or mental ability to do basic work activities"). And the ALJ said he "considered all of the claimant's impairments and all of the records when assessing the claimant's residual functional capacity." Adm. Rec. at 1753; *see also id.* at 1755; *Oneal v. Comm'r, SSA*, No. 22-1102, 2023 WL 2822123, at *2 (10th Cir. Apr. 7, 2023) (holding that an ALJ's detailed review of the medical record and explicit statement that he considered the entire record met the ALJ's obligation to consider all impairments in the RFC determination). Consequently, Plaintiff's argument that he would have had additional

functional limitations in his RFC had the ALJ properly considered his migraines is essentially an attempt to dispute the ALJ's implicit conclusion that his migraines were non-severe, i.e., impairments which did "not significantly limit" basic work activities. Federal courts may not reweigh the evidence. *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

It is especially telling that Plaintiff does not point to any medical evidence or opinion in the record that his headaches and migraines would have resulted in a physical work limitation of absenteeism or time-off-task. *See id.*; *see also Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) ("[A]n ALJ may permissibly engage in a less extensive analysis of the medical evidence where 'none of the record medical evidence conflicts with the ALJ's conclusion that claimant can perform …work.'")(quoting *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). Instead, Plaintiff points to his own testimony that he has migraines twice per week. *See* Doc. 8 at 32 (citing Adm. Rec. 1796–97). But that is insufficient: In order to credit this argument, a court would have to come to its own independent medical conclusion that Plaintiff's testimony was more credible than the ALJ's finding that Plaintiff's migraines would "not significantly limit" basic work activities. But Plaintiff's assertion that his headaches and migraines would result in absenteeism or time-off-task lacks support in the medical record. And a physical limitation that is unsupported by the record is not uncontroverted evidence, so the ALJ was not required to explicitly address it. *See Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009) (noting an ALJ is only obligated to discuss "uncontroverted evidence"); *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (holding that an ALJ was not required to discuss the limiting effect of a severe impairment on each physical RFC determination); *Natalie L. v. Kijakazi*, 631 F. Supp. 3d 1114 (D. Utah 2022), *aff'd sub nom. Lager v. Comm'r*, SSA, No. 22-4116, 2023 WL 6307490 (10th Cir. Sept. 28, 2023) (holding that an ALJ was not required to consider absenteeism as a result of migraines when there was no evidence in the record to support the plaintiff's assertion of the degree of absenteeism).

## B

Plaintiff asserts the Commissioner failed to sustain his burden at step five. At step five, "the burden of proof shifts to the Commissioner" to show that a claimant has the RFC "to perform work in the national economy, given her age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and

internal quotation marks omitted). An ALJ may rely on a "vocational expert" to answer this question. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009). Vocational experts "provide evidence at hearings before [ALJs]," including information from the "Dictionary of Occupational Titles" (DOT). *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). "An ALJ must resolve conflicts between the VE's testimony and the DOT." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 909 (10th Cir. 2023).

Plaintiff's main argument is that the ALJ failed to reconcile a conflict between Plaintiff's RFC and the jobs identified by the vocational expert. Doc. 8 at 32–34. Specifically, Plaintiff contends that the vocational expert identified reasoning level two jobs even though Plaintiff's RFC limited him to reasoning level one jobs. Doc. 8 at 34.

But there was no conflict here for the ALJ to resolve. *Contra* Doc. 8 at 34. The ALJ determined that Plaintiff could:

> apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with only occasional judgment and workplace changes.

Adm. Rec. 1755. This RFC determination is not facially inconsistent with the DOT's definition of reasoning level two jobs; in fact, it adopts, practically verbatim, the first half of the DOT's reasoning level two definition. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles, Appendix C* (4th Ed. 1991), www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (defining reasoning level two as "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations"). Moreover, the ALJ considered and explicitly rejected the idea that Plaintiff should "be[] limited to only 1-2 step instructions." Adm. Rec. at 1758. Assessing Plaintiff's capacity for reasoning level two jobs was consistent with Plaintiff's assessed reasoning limitations.

Plaintiff says that his RFC is not verbatim from the definition of reasoning level two because the ALJ found that Plaintiff should be limited to "simple, work-related decisions with only occasional judgment and workplace changes." Adm. Rec. at 1755; Doc. 8 at 34. Plaintiff says that limit is more consistent with reasoning level one, which

requires a person to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* Doc. 8 at 34. But the ALJ's use of the word "occasional" does not limit Plaintiff to reasoning level one jobs. Plaintiff identifies no factual conflict between his RFC to perform with "occasional judgment and workplace changes" and reasoning level two, which requires him to reason from "standardized situations" with a few concrete variables. *See Kyle Edward Victor G. v. Saul*, No. CV 19-2518, 2020 WL 3960422, at *9–10 (D. Kan. July 13, 2020) (rejecting the argument that limiting a plaintiff to "occasional judgment" in the plaintiff's RFC also limited the plaintiff to reasoning level one jobs). Plaintiff's reliance on *R.S. v. Saul* is misplaced. *Contra* Doc. 8 at 34 (citing Case No. 20-2416, 2021 WL 2156412, at *9 (D. Kan. May 27, 2021)). Unlike the claimant in R.S., whose RFC was more restrictive limiting R.S. to "few, *if any*, workplace changes," 2021 WL 2156412, at *9 (D. Kan. May 27, 2021) (emphasis added), Plaintiff's RFC is that he can accommodate "occasional workplace changes," Adm. Rec. 1755.

The ALJ did not run afoul of his requirements to resolve conflicts pursuant to SSR 00-4p. *Contra* Doc. 8 at 33–34. Plaintiff fails to identify a meaningful conflict, and the ALJ asked the vocational expert, Dr. Debra Steele, whether there was a conflict and she testified there was not. *See* Adm. Rec. 1801–05; *see also* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (requiring that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict"). That is adequate to discharge the ALJ's duty. *See Mendez v. Colvin*, 588 F. App'x 776 (10th Cir. 2014) (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) for the principle that an "ALJ can rely on the VE's testimony if there is adequate record support for doing so because 'all kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation"); *Barrett v. Astrue,* 340 F. App'x 481, 488 (10th Cir. 2009) (holding there was no conflict for the ALJ to resolve at step five when the RFC was limited to "simple tasks and only tasks that require him to exercise occasional judgment" and a job listed in the DOT for reasoning level two.).

Plaintiff also asserts that the vocational expert erroneously identified that he could act as a deli cutter/slicer, DOT # 316.684-014, so remand is warranted because the ALJ did not separately find that the

other two jobs existed in significant numbers in the national economy. Doc. 8 at 35–36. Even if true, an ALJ need only identify one job that Plaintiff could do that exists in significant numbers in the national economy. *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 649–50 (10th Cir. 2020). The requirement is satisfied here because silver wrapper, has 155,340 jobs in the national economy. *See* Adm. Rec. at 1762; *Stokes v. Astrue,* 274 F. App'x 675, 684 (10th Cir. 2008) (holding no reasonable factfinder could hold that 152,000 jobs in the national economy was not "significant").

## C

Plaintiff finally asserts that the ALJ erred by not evaluating his claim in the alternative for a closed period of disability. Doc. 8 at 36–37. A closed period of disability application requires that an ALJ consider whether a plaintiff was disabled for a finite period of time but recovered from his disability before the ALJ's decision. *Newbold v. Colvin*, 718 F.3d 1257, n.1 (10th Cir. 2013) (describing a closed-period case). Plaintiff here identified one such period where the ALJ could have found him disabled "[s]olely for example" from June 30, 2017 to "beyond" April 27, 2018 since was "having surgeries and severe daily headaches." *Id.* at 37.

The ALJ was not obligated to consider a closed period of disability for two reasons. First, Plaintiff did not amend his claim to request consideration of a closed period of disability—nor did he provide a precise end date. The ALJ was not obligated to consider a question not presented to him. *See Hays v. Kijakazi*, No. CIV-21-448, 2022 WL 3582507, at *5 (W.D. Okla. Aug. 19, 2022) (collecting cases); *see also Combs v. Kijakazi*, 69 F.4th 428, 437 (7th Cir. 2023) (nothing that an ALJ has no obligation to consider a closed period where the end date cannot be identified). Second, the ALJ determined that Plaintiff retained the capacity to work from his alleged onset date. Adm. Rec. 1749–62. Where the ALJ concludes that a plaintiff does not meet disability requirements during any period relevant to his claim, the ALJ cannot assess a closed period of disability benefits. *See Powell v. Kijakazi*, No. CV 21-443, 2022 WL 2904393, at *12 (D.N.M. July 22, 2022); *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 773 (11th Cir. 2006); *cf. Robinson v. Apfel*, 172 F.3d 63, 1999 WL 74025, at *4 (10th Cir. 1999).

## III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.


Date: May 8, 2024                           _s/ Toby Crouse_____
                                            Toby Crouse
                                            United States District Judge